UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

    Jesus C. Vega,                                          Bankruptcy Case No. 19-20099-PRW
                                                                         Chapter 13

    Debtor.

## DECISION AND ORDER
## SUSTAINING OBJECTION TO THE PROOF OF CLAIM
## FILED BY PRIME LENDING, AS MORTGAGEE

PAUL R. WARREN, U.S.B.J.

       Jesus Vega owns a home in Greece, New York. Mr. Vega fell behind on his mortgage payments, causing PrimeLending to commence a foreclosure action. Mr. Vega filed this Chapter 13 case to save his home from foreclosure. (ECF Nos. 1, 7). PrimeLending filed a timely proof of claim. (Claims Register, Claim No. 7-1). The proof of claim asserts that $26,071 must be paid by Mr. Vega to cure the pre-petition default under the mortgage. (*Id.* ¶ 9 of Official Form 410).

       The Chapter 13 Trustee filed an objection to the proof of claim, arguing that the PrimeLending claim includes a $10,000 "advance" that is not properly includable in the pre-petition default calculation, but not contesting the $16,071 remaining amount as the correct pre-petition mortgage arrearage. (ECF No. 31).[1] PrimeLending has opposed the Trustee's objection. (ECF No. 35). Because the $10,000 outlay by PrimeLending is in the nature of a refundable, good-faith deposit required to be made by a foreclosing mortgagee, under a local law recently enacted by the Town of Greece, that sum is not properly includable in its proof of claim at this point in

---

[1]     It is not clear why it took 8 months for the objection to be filed by the Trustee. The prompt review and resolution of secured claims is a critical precondition to plan confirmation. *See* 11 U.S.C. § 1325(a)(5) and § 502(a).

time. The Trustee's objection to the inclusion of that $10,000 amount in the PrimeLending proof of claim is **SUSTAINED**. The balance of the claim, in the amount of $16,071, is allowed as a secured claim.

## I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

## II.

## ISSUE

The issue to be resolved is whether foreclosing mortgagees can properly include, in a secured Chapter 13 claim for pre-petition mortgage arrears, an amount the mortgagee is required to post as a fully refundable, good-faith deposit with a local municipality, under a local law adopted to ensure that mortgagees monitor a subject property during the pendency of a foreclosure action. The answer is No.

## III.

## FACTS

In April 2016, the Town of Greece, New York adopted a local law establishing a "Vacant and Defaulted Mortgage Property Registry." *See* Town of Greece, NY Local Law 1-2016, Chapter 194. At its core, the purpose of the local law is to require a foreclosing mortgagee to notify the

2

Town of Greece upon the commencement of a foreclosure action and to require the mortgagee to regularly inspect the real property while the foreclosure action remains pending—all designed to prevent the proliferation of zombie properties within the Town. *Id.* § 194-5. And, to incentivize a foreclosing mortgagee to regularly inspect and maintain unoccupied property during the pendency of a foreclosure, the mortgagee is required to provide the Town with a bond, letter of credit, or cash deposit of $10,000 "to secure the continued maintenance of the property throughout the foreclosure proceeding," and to reimburse the Town for expenses it might incur if the mortgagee fails to inspect and maintain the property. *Id.* § 194-7.

It seems that Mr. Vega defaulted in his obligations under the mortgage because, in November 2018, PrimeLending filed a "Notice of Pendency of Mortgage Foreclosure" with the Monroe County Clerk. *See* County Clerk Book 01490, Page 0212, Control No. 201811080665. Rather than posting a bond or letter of credit, on January 8, 2019, PrimeLending paid a $10,000 cash deposit to the Town of Greece. A few weeks later, Mr. Vega filed this Chapter 13 case.

Mr. Vega's Chapter 13 plan proposes to cure his pre-petition mortgage arrearage—estimated by him to be $18,000—in 60 monthly installments. (ECF No. 2). On April 5, 2019, PrimeLending filed a timely, secured proof of claim, asserting that payment of the sum of $26,071 is necessary to cure Mr. Vega's pre-petition default. (Claims Register, Claim No. 7-1, ¶ 9). The payment history attached to that proof of claim shows that PrimeLending made an "advance" of $10,000 on January 8, 2019. (*Id.* Official Form 410A, p.2). On April 16, 2019, PrimeLending filed an Objection to Confirmation of Plan, asserting that the pre-petition arrearage required to be cured under the plan amounted to $26,071. (ECF No. 24). The confirmation hearing has been adjourned by the Trustee five times, beginning in April 2019. (ECF Nos. 23, 25, 26, 28, 30). The PrimeLending objection to confirmation remains unaddressed by Mr. Vega.

3

## IV.

## DISCUSSION

In early December 2019, eight months after it was filed, the Trustee filed an objection to PrimeLending's proof of claim. (ECF No. 31). The Trustee asserts (incorrectly) that the two "outlays" made by PrimeLending, in the amounts of $10,000 and $500.00 respectively "w[ere] paid out of Mr. Vega's *escrow account*." (ECF No. 31 ¶ 6 (emphasis added)). While Official Form 410A attached to the PrimeLending proof of claim does, indeed, show that PrimeLending advanced $10,000 on January 8, 2019 and $500.00 on January 16, 2019, the amount of Mr. Vega's "Escrow Balance" ($3,997.97) remained unchanged. (Claims Register, Claim No. 7-1, p.5).[2] For its part, PrimeLending repeatedly asserts that "[it] was forced to advance [$10,000 in cash] due to the Debtor's default." (ECF No. 35 ¶¶ 8-10). PrimeLending makes no mention of the fact that the $10,000 "deposit" is fully refundable to PrimeLending, not to Mr. Vega, so long as PrimeLending inspected the property monthly—and performed necessary maintenance if Mr. Vega deserted the property—while the foreclosure action remained pending. And, PrimeLending makes no mention of the fact that the local law did not "force" it to make a $10,000 *cash deposit*—the local law also permits a mortgagee to post a bond or letter of credit with the Town. Town of Greece, NY Local Law 1-2016, Chapter 194, § 194-7. While PrimeLending expresses hopelessness and great worry about the loss of its cash deposit "if the Town of Greece *is forced* to draw from the funds," PrimeLending conveniently neglects to mention that the Town would only do so if the property

---

[2] It is unclear whether the $500.00 "outlay" is included in the remaining balance ($16,071) due on the PrimeLending claim. The Trustee's objection (and PrimeLending's response) focused solely on the $10,000 outlay. (ECF Nos. 31, 35). The Court assumes that the $500 amount reflected in Form 410A is included in the $16,071 arrearage balance, to which there is no objection.

4

became vacant and if PrimeLending failed to take steps to maintain and protect the property. (ECF No. 35 ¶ 12 (emphasis added)). It would seem that, if PrimeLending is a dungeon-bound prisoner under the Town's local law, PrimeLending holds the keys to the dungeon door in its back pocket.

In its submission, PrimeLending admits that when the foreclosure action is resolved, it will be refunded its $10,000 cash deposit. (ECF No. 35 ¶ 12). Of course, this assumes that the Town does not find it necessary to take steps to preserve the property—a situation that is wholly avoidable if PrimeLending inspects the property monthly (to ensure it is occupied) and ensures that the property is maintained (should it become unoccupied). The question, as PrimeLending sees it, is "how will PrimeLending recoup those funds if it's not listed in the POC? The Town of Greece? The Debtor? Creditor will be placed in a very vulnerable position." (ECF No. 35 ¶ 12). Rubbish.

Here, the foreclosure action is a long way from judgment. Assuming that Mr. Vegas does not have a defense, any expenses associated with preservation of the property can be sought in the foreclosure action. If, to avoid having the Town take steps to maintain the property (and risk losing its $10,000 deposit), PrimeLending incurs costs to inspect, secure, or maintain the property during the pendency of this bankruptcy, Rule 3002.1(c) and (d) FRBP *requires* that PrimeLending file— *as a supplement to its proof of claim*—an itemization of such fees, expenses, or charges within 180 days of being incurred. But, to permit PrimeLending to preemptively include its $10,000 refundable deposit in its pre-petition mortgage arrearage claim, and be repaid that amount by Mr. Vega under the Chapter 13 plan, is unconscionable.

Under 11 U.S.C. §§ 502(b) and 105(a), the Court determines that the amount of PrimeLending's secured claim for pre-petition mortgage arrears is $16,071. Under 11 U.S.C. § 1322(b)(5), Mr. Vega is required to cure that default under the 60-month term of his Chapter 13

plan.  Any *actual* fees, expenses or charges incurred by PrimeLending—not imagined ones—are to be presented to the Court and demanded of Mr. Vega under Rule 3002.1(c) and (d) FRBP.  The Trustee's claim objection is **SUSTAINED**.  Further, under 11 U.S.C. § 105(a), the Court exercises its discretion and **ORDERS** that PrimeLending is not entitled to recover—from Mr. Vega or from the estate—its attorneys' fees or costs associated with its opposition to the Trustee's claim objection, as the Court finds that the position taken by PrimeLending borders on frivolous.

## IV.
## CONCLUSION

The Trustee's objection to the proof of claim of PrimeLending is **SUSTAINED**.  The secured claim of PrimeLending for pre-petition mortgage arrears is determined to be $16,071.00.

**IT IS SO ORDERED.**

DATED: January 10, 2020 _____/s/_____
     Rochester, New York      HON. PAUL R. WARREN
                                 United States Bankruptcy Judge